**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JUDY BATISTE** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 09-01018-DLD** |
| **MICHAEL J. ASTRUE, Commissioner** of Social Security | **CONSENT CASE** |

## RULING

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits. In making that final decision, the Commissioner reached the fifth and final step of the five-step sequential disability analysis set forth in 20 C.F.R. § 404.1520(b)-(f)& § 416.920(b)-(f).[1] The Commissioner determined that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; obesity; and benign tubular adenoma of the colon, status post right hemicolectomy, and that these impairments prevented her from performing her past relevant work as a cashier, housekeeper, and nursing assistant. The Commissioner determined, however, that the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).[2] (TR 26-29) Following consideration of the testimony of an impartial medical expert, and relying on the medical-vocational guidelines

---

[1] *See,e.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[2] 20 CFR §404.1567, defines the physical exertion requirements of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

as a framework for decision, the Commissioner thereupon determined that Ms. Batiste was not disabled within the meaning of the Social Security Act.

## *Background*

Plaintiff protectively filed an application for benefits on September 10, 2004,[3] alleging a disability onset date of January 16, 2003, later amended to February 1, 2004,[4] due to degenerative disc disease of the lumbar spine, and scoliosis of the coccyx. (TR 133) The claim was initially denied; plaintiff filed a timely request for hearing; and a hearing was held on February 6, 2006.

The ALJ issued a partially favorable decision on March 28, 2006, finding plaintiff disabled from May 18, 2005, a finding he made based on two things: plaintiff's right hemicolectomy surgery of May 18, 2005, combined with records from Earl K. Long after this time which document a "worsening of the claimant's back pain, with a positive straight leg raise test on January 12, 2006." The ALJ noted that this finding was "noticeably absent in prior evaluations." (TR 73). The ALJ further noted that, prior to May 18, 2005, plaintiff had the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally, stand and walk six hours in a workday and sit six hours in a workday. The ALJ also determined that plaintiff's ability to push and pull was limited by the weight she was able to lift and carry. (TR 68). The ALJ therefore found that the plaintiff was not disabled from the period of February 1, 2004 (her alleged onset date) through May 17,

---

[3]The ALJ's report mistakenly listed the protective filing date as August 10, 2004. (TR 116, TR 65)

[4]Plaintiff was born on February 5, 1954, which means she turned 50 years old four days after the amended alleged onset date. Thus, her age is therefore defined in 20 CFR 404.1563 and 416.963 as "closely approaching advanced age." (TR 73)

2005. (TR 74)  On May 30, 2006, plaintiff filed a request for review of the unfavorable

portion of the partially favorable decision (TR 95-98).

On October 2, 2006, the Appeals Council reviewed the ALJ's decision, affirming the

ALJ's finding that the plaintiff was disabled beginning May 18, 2005, but vacated the

hearing decision only with respect to the issue of disability before May 18, 2005, remanding

the case for resolution of the following issue during that period [February 1, 2004 through

May 17, 2005]:

> The claimant's treating physician, J. Isaza, M.D., reported in July 2004 that the claimant was "unable to return to previous occupations," but that a functional capacity evaluation would be necessary to determine the extent of her limitations (Exhibit 3F).  However, Dr. Isaza also noted later in that same report that he did believe that the claimant was disabled "at this time" (Exhibit 3F).  For the limited period at issue, a clarification should be obtained regarding whether in fact Dr. Isaza intended to find the claimant disabled.  In conjunction with the clarification, evidence should be obtained if necessary from a medical expert to assist in determining the extent of the claimant's limitations in the period at issue.  (TR 100)

> The Appeals Council also stated that, upon remand, the ALJ will:

> •    Recontact the claimant's treating physician, Dr. Isaza, to clarify his opinion regarding the claimant's ability to perform any work activity.

> •    Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments. (TR 100-101)

On February 26, 2007, the ALJ sent correspondence to plaintiff's counsel, advising

counsel that it was plaintiff's responsibility to provide medical evidence regarding the

impairments and their severity (20 CFR 404.1512), and that in order to expedite processing

of this claim, she should, at one time, submit the following information: "[a]ll medical

records (not duplicates) from one year prior to the alleged onset date to the present and

any other relevant medical, school or other records not already in file." Counsel also was

advised in that correspondence to contact the Social Security Administration when all relevant evidence was up-to-date and the case ready to be scheduled for another hearing. (TR 102)

The hearing subsequently was held on May 20, 2008, approximately 19 months after the remand order was received by plaintiff and her counsel, and approximately 15 months after the ALJ advised plaintiff of her responsibility to provide updated evidence.[5] (TR 99-101) However, neither the plaintiff nor the ALJ explicitly requested or received a clarification of Dr. Isaza's original opinion prior to the hearing.[6] At the hearing, the ALJ also confirmed with plaintiff's counsel that as of the date of the hearing, the only new exhibits generated or received after the remand order were notices of hearings and a resume. (TR 419) The hearing transcript confirms that no additional medical evidence from the relevant time period was received during the hearing. Thus, at the time of the hearing, all medical evidence created during the relevant time period was before the ALJ.

During the hearing, Dr. Janese, the impartial medical expert and neurosurgeon, gave testimony that was in conflict with Dr. Isaza's original opinion, and led plaintiff to request that the record be held open so that she could secure a response from Dr. Isaza which would rebut Dr. Janese's opinion. After some discussion, the ALJ allowed plaintiff two weeks to provide a response, and advised that the plaintiff would have a written decision in "three to five weeks." (TR 456)

---

[5]Plaintiff had to have been aware, or at least should have been aware, that it was her burden to prove the extent of her impairment, and that the reason for the subsequent hearing was due to the inexactness of Dr. Isaza's original opinion, as articulated in the remand order received by both plaintiff and her counsel in October, 2006.

[6]This omission apparently went unnoticed until the time of the appeal, as there is no discussion in the hearing transcript relating to any clarification of Dr. Isaza's opinion.

Plaintiff did not submit Dr. Isaza's response timely, and on June 26, 2008, without benefit of Dr. Isaza's response, the ALJ issued an unfavorable decision regarding the time period of February 1, 2004 through May 17, 2005, finding that the plaintiff was not disabled for this period. (TR 26-36) The plaintiff filed a timely request for review of this decision on August 29, 2008. (TR 12-13)

On July 1, 2009, the Appeal Council sent correspondence to plaintiff's counsel, advising that counsel could send more evidence, but that such evidence must be new and material to the issues considered in the hearing decision. (TR 10) On August 14, 2009, plaintiff responded to the Appeals Council's letter, and forwarded copies of his June 2, 2008, and June 12, 2008, letters to the ALJ; his May 20, 2008, letter to Dr. Isaza; and Dr. Isaza's June 18, 2008, clarification opinion.[7] (TR 398-410, a/k/a AC-1)

Dr. Isaza's clarification opinion reads, in pertinent part, as follows:

> . . . stating that the patient had lumbar radiculopathy was because of her complaints of leg pain . . and I therefore stand by the diagnosis of lumbar radiculopathy.

> In assessing the patient's complaints of back and bilateral leg pain, these are, of course, subjective complaints. On exam, there were findings including a positive straight leg raise test and decreased reflexes that I think helped to contribute to the diagnosis.

> . . . .

(TR 408-410)

Dr. Isaza did not report that he had ever received or given any additional tests to plaintiff during the relevant time period to clarify her condition; nor did he provide any dates for the exam he referenced in his clarification opinion regarding a positive straight leg raise test.

---

[7]The date stamp on Dr. Isaza's June 18, 2008, clarification opinion is July 2, 2008, 6 days after the ALJ issued the unfavorable decision. (TR 408)

On October 9, 2009, the Appeals Counsel acknowledged receipt of plaintiff''s August 14, 2009, correspondence with enclosures, and denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

Plaintiff thereafter filed an appeal with this court on December 3, 2009. In this appeal, plaintiff contends that: 1) the ALJ failed to comply with the remand order issued by the Appeals Council; and (2) the ALJ failed to give proper weight to Dr. Isaza's opinion; thus the ALJ's decision is not supported by substantial evidence.

### ISSUE

The issue before this Court is whether the Commissioner's finding that Judy Batiste is not disabled for the period of February 1, 2004, through May 17, 2005, is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g).

### GOVERNING LAW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id*. Substantial evidence means more than a scintilla, but less

than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id*. A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id*.

The overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). If a claimant proves that she no longer is able to work in her prior job, then the burden shifts to the Commissioner to show that there is some other type of substantial gainful activity that the claimant can perform. *Id.* Thus, in cases such as this one where the Commissioner determines that the claimant cannot perform her past relevant work and accordingly reaches the fifth step of the five-step disability sequential analysis,[8] the Commissioner bears the burden of establishing that there is other work in the economy that the claimant can perform. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). If the Commissioner adequately points to potential alternative employment, the ultimate burden of persuasion then returns to the claimant to prove her inability to perform those jobs. *Id*.; *Kraemer v. Sullivan*, 885 F.2d 206 (5th Cir. 1989).

---

[8] The Commissioner uses a five-step sequential analysis to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir.2005); *Masterson v. Barnhart*, 309 F.3d 267,271-72 (5th Cir.2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.2000). See, also, 20 C.F.R. § 404.1520.

## DISCUSSION

### Error 1: The ALJ Failed to Comply with the Appeals Council's Remand Order

With respect to the ALJ's alleged non-compliance with the Appeals Council's remand order, plaintiff argues that 20 C.F.R. § 404.977(b) requires that the ALJ "shall take any action that is ordered by the Appeals Council," but that the ALJ failed to comply with this statute when he did not recontact the claimant's treating physician, Dr. Isaza, to clarify his opinion regarding the claimant's ability to perform any work activity. The plaintiff informed the Appeals Council of the ALJ's alleged non-compliance in her request for review of August 2008, complaining to the Appeals Council that the ALJ "entirely neglected" to follow the remand order, "chose to ignore" the remand order, and was in "blatant noncompliance" with the order. (TR 12) Plaintiff repeated these arguments in her August 14, 2009, brief to the Appeals Council, wherein she also included her letters to the ALJ and Dr. Isaza, along with Dr. Isaza's clarification opinion. (TR 398-414)

Plaintiff was not the only one who noted that the clarification opinion was missing– the ALJ actually pointed out in his decision that he did not have Dr. Isaza's clarification opinion before issuing his decision:

> No evidence has been provided since the hearing was held over 30 days ago, although the claimant's representative made a written request to Dr. Isaza to address specific questions relating to Dr. Janese's testimony. There is evidence from Dr. Isaza's office indicating that he would be out of the country May 24-30, 2008, and that a requested appointment could not be schedule until June 25 or later. In light of the fact that the disputed period is in the increasingly remote past, newly generated medical findings are unlikely to be material to the adjudication.

(TR 33)

The ALJ thereupon went about examining all of the existing medical evidence in the record that had been generated contemporaneously during the relevant time period.

The Appeals Council therefore was on notice from both the plaintiff and the ALJ that the determination was reached without the benefit of the clarification opinion. More than one year later, in October 2009, the Appeals Council issued its decision, and upheld the ALJ's determination, specifically stating that it had "considered the reasons you [plaintiff] disagree with the decision in the material listed on the enclosed Order of Appeals Council [TR 398-414]." (TR 6-7) The Appeals Council therefore considered the clarification evidence from Dr. Isaza, but found that it did not provide a basis for changing the ALJ's decision.

The court likewise finds that neither the clarification order itself nor the way it finally arrived at the Appeals Council provides a basis for overturning the ALJ's decision. Any error committed by the ALJ in the way he complied with the remand order (having plaintiff secure the clarification) is harmless error, as procedural perfection in social security administrative proceedings is not required, and the substantial rights of the plaintiff were not affected simply because the ALJ did not contact Dr. Isaza directly. The clarification opinion ultimately made its way to the Appeals Council, where it was reviewed. Additionally, as discussed in the next section, the ALJ adequately addressed the content of the clarification, even without benefit of seeing it beforehand; thus there was nothing in the clarification opinion that would have affected the ALJ's decision. The Court accordingly will not reverse the decision based on this ground. *Accord Mays v. Bowen*, 837 F.2d 1362, 1363-64 (5th Cir. 1988)

***Error 2: The ALJ Failed to Give Proper Weight to Dr. Isaza's Opinion***

Next, plaintiff contends that the ALJ gave "great weight" to the medical expert who testified at the hearing, and "little weight" to Dr. Isaza's original opinion, despite "obvious contradictions in the medical expert's testimony as well as the expert's general lack of familiarity with the record evidence." (rec. doc. 12, pg 7) While plaintiff fails to articulate this argument in so many words, it is clear that plaintiff thus argues that the ALJ did not assign the proper weight to plaintiff's treating physician's opinion.

The governing law in the Fifth Circuit is that the opinions, diagnoses, and medical evidence of treating physicians who are familiar with a plaintiff's condition should be accorded considerable weight in determining disability. *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). An ALJ may give less weight to a treating physician's opinion only when there is good cause shown to the contrary. *Id.* Good cause includes instances where the physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or otherwise unsupported by the record. *Hospital Service District No. 1 Of The Parish Of LaFourche v. Thompson*, 2004 WL 192047, *3 (E.D. La. Aug. 25, 2004). Also, the general rule is that a treating physician's opinion on the nature and severity of a claimant's impairments will be given "controlling weight" only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If the treating physician's opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic tests or otherwise unsupported by the evidence, the ALJ has good cause for discounting the treating physician's opinion in favor of other experts, not giving the opinion considerable weight. *Myers v. Apfel*, 238 F.3d 617,

621 (5th Cir. 2001), *Newton*, 209 F.3d at 456 (*citing Brown v. Apfel*, 192 F.3d 492,500 (5th

Cir. 1999). The regulations and circuit law are clear that while it is within the ALJ's

discretion to assign greater or lesser weight to the medical evidence, it is not within his

discretion to reject the opinion of a treating physician without a detailed analysis[9] of the

treating physician's view.   1920 C.F.R. § 404.1527(d)(2), SSR 96-2p.  See also, *Reynolds*

*v. Astrue*, 2010 WL 583918, at *7 (N.D. Miss. 2010).  However, that detailed analysis is

only required in the absence of competing first-hand medical evidence. *Newton*, at 456-

458.

Here, the ALJ discussed at length the competing first-hand medical evidence, which

included not only the opinion of Dr. Janese, but also the records and opinions of Dr.

Morgan, plaintiff's workman's compensation physician; Dr. Armington, the radiologist who

interpreted the MRI; Dr. Barrow, another of plaintiff's treating physicians;[10] and Dr.

Campanella, the consultative examiner. The ALJ also discussed at length Dr. Isaza's

original opinion and its inconsistency with the record evidence for the relevant time period,

all of which was available for the ALJ's review at the time of the hearing. (TR 34) Thus, the

ALJ fulfilled his duties when he discussed and considered Dr. Isaza's original opinion and

the competing medical evidence, and he thoroughly articulated his reasons for the weight

he assigned to Dr. Isaza's opinion.  While another fact finder might have reached a different

---

[9]"Detailed analysis" refers to the six factors set forth in § 404.1527(e) and explicitly applies only to medical opinions, not disability opinions, as those opinions are reserved for the Commissioner. *See Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

[10]Dr. Barrow examined plaintiff in January 2004 and found that the neurological findings were benign, albeit with equivocal neural tension testing and moderately restricted range of motion in the spine when standing.  When Dr. Barrow next saw plaintiff on April 14, 2004, she had a negative straight leg raise test, and retained deep tendon reflexes.  (TR 31)

conclusion, any conflicts in the medical evidence are to be resolved by the Commissioner, not by the courts.  *E.g.,Oldham v.,Schweiker*, 660 F. 2d 1078, 1084 (5th Cir. 1981).

Moreover, assuming *in arguendo*, that the ALJ had considered the clarification opinion, the clarification opinion really did little more than to repeat the original opinion's conclusions with slightly more detail, adding a new diagnosis of radiculopathy,  and including a finding of a positive straight leg raise test.  The clarification opinion, however, like the original, was in conflict with the competing medical evidence, including that of  Dr. Isaza's own records from the relevant time period.  For example, Dr. Isaza's original opinion diagnosed plaintiff with bilateral foraminal stenosis at L4-L5 and L5-S1, sacroilitis, and an annular tear at L5-S1.  (TR 275) A review of Dr. Isaza's records reveals that while plaintiff complained of leg pain in 2004,  Dr. Isaza never diagnosed plaintiff with radiculopathy during the relevant time period.  It was not until 2008 in his clarification opinion that he first mentioned radiculopathy.   Also, the contemporaneous relevant records all show that plaintiff's straight leg raise tests were negative.  In contrast, Dr. Isaza's clarification opinion inexplicably states for the first time that plaintiff's straight leg raise test was positive, which is not supported by his or anyone else's medical records.[11]

The ALJ noted these inconsistencies between Dr. Isaza's opinion and the other medical evidence in his decision, and he specifically noted the clinical findings or medical records evidencing negative straight leg tests during the relevant time period.  In fact, it was the existence of a positive straight leg test *after* the relevant time period that  was one of

---

[11]  As stated earlier, Dr. Isaza apparently required an examination of plaintiff before issuing his clarification report, and he did not assign a date for the positive straight leg test; thus it is possible that he may have been using her then current medical status to opine on what the ALJ referred to as the "increasingly remote past."

the deciding factors in determining the onset date of disability. Thus, Dr. Isaza's clarification opinion, like his original opinion, is in conflict not only with his own records, but also with those of the other medical providers and with the clinical findings and medical records of the relevant time period. Therefore, all of the inconsistencies and record medical evidence pointed out by the ALJ in his decision applied equally as well to the clarification opinion, even though he did not have it before him. Any error in not considering it therefore was harmless.

The court is thus unpersuaded by plaintiff's arguments that the ALJ did not assign the proper weight to Dr. Isaza's original opinion or that consideration of the clarification opinion would have made a difference. The ALJ amply supported his decision to assign little weight to Dr. Isaza's opinion.

Thus, based on a review of the record, the court finds that the ALJ's decision is supported by substantial evidence, and the decision of the Commissioner denying disability insurance benefits ("DIB") to Judy Batiste for the period of February 1, 2004, through May 17, 2005, is **AFFIRMED** and plaintiff's complaint is **DISMISSED** with prejudice.

Signed in Baton Rouge, Louisiana, on March 22, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**